Bernadette BORRERO–RODRIGUEZ Heidy M. Castillo–Borrero Hiram Cedeno–Caraballo Fatima Farhan Rodriguez Leslie Flores–Rodriguez Juanita Gotay–Irizarry Luis M. Hernandez–Tiru Anette Irizarry–Fraticelli Norberto Lajara–Ramos Julio Medina–Vega Jose E. Olivera–Gonzalez Miriam Ortiz–Camacho Milagros Padro–Vega Maritza Ramos–Sepulveda Julio Cesar Ramos–Torres Maria M. Rodriguez–Garcia Jorge Rosa–Ortiz Jimmy Rosas–Rios Neftali Sepulveda–Orengo Irma Talavera–Rivera Yanira Torres–Torres Plaintiffs

v.

Rafael A. MONTALVO–VAZQUEZ, individually and as Executive Director of the Consorcio Del Suroeste Edgardo Arlequin, individually and as Mayor of the Municipality of Guayanilla; Municipality of Guayanilla Martin Vargas–Morales, individually and as Mayor of the Municipality of Guánica; Municipality of Guanica Francisco Javier Rivera–Toro, individually and as Mayor of the Municipality of Hormigueros, and as President of the Board of Director of the Consorcio Del Suroeste, Isidro Negron, individually and as Mayor of the Municipali-

ty of San German; Municipality of San German; Miguel G. Ortiz–Velez, individually and as Mayor of the Municipality of Sabana Grande; Municipality of Sabana Grande; Marcos Irizarry, individually and as Mayor of the Municipality of Lajas; Municipality of Lajas; Walter Rodriguez, individually and as Mayor of the Municipality of Peñuelas, Municipality of Penuelas; Santos Padilla–Ferrer, individually and as Mayor of the Municipality of Cabo Rojo; Municipality of Cabo Rojo; Abel Nazario–Quiñones, individually and as Mayor of the Municipality of Yauco; Municipality of Yauco; Gilberto Perez–Valentin, individually and as Mayor of Maricao; Municipality of Maricao; Consorcio Del Suroeste; X, Y and Z unknown defendants Defendants

No. CIV.02–1214CCC.

United States District Court, D. Puerto Rico.

Jan. 31, 2003.

Monique Guillemard–Noble, Esq.

R.A. Robles–Díaz, Esq., J.R. González–Muñoz, Esq., M. Pagán, Esq., Lind O. Merle–Feliciano, Esq., J. Martínez–Luciano, Esq., J.M. Emmanuelli–Huertas, Esq., J.N. Font–Guzmán, Esq., J.P. Rivera–Román, Esq., for Defendant or Respondent.

## ORDER

CEREZO, District Judge.

This action under 42 U.S.C. § 1983 is brought by 21 plaintiffs, all transitory employees of the Consorcio del Suroeste, against said entity and its officers, the individual defendants, alleging political discrimination because of their affiliation to the New Progressive Party. The various defendants have filed motions to dismiss for lack of subject matter jurisdiction. The first of these (**docket entry 43**), filed on June 10, 2002 by defendants Hon. Rafael A. Montalvo–Vázquez, Edgardo Arlequín, Martin Vargas–Morales, Isidro Negrón, Miguel G. Ortíz–Vélez, Marcos Irizarry, Walter Rodríguez, Santos Padilla–Ferrer, Abel Nazario–Quiñones, and Gilberto Pérez–Valentín in their individual capacities, and joined by defendant Martín Vargas–Morales on July 10, 2002 (**docket entry 60**), bases its analysis on the interpretation of the Job Training Partnership Act (JTPA), Pub.L. 97–300 of Oct 13, 1982, 29 U.S.C. § 1501, *et. seq.*, which movants admit at page 3 of their motion was replaced in 1998 by the Workforce Invest-ment Act of 1998(WIA), Pub.L. 105–220, 29 U.S.C. § 2801, *et. seq.* The second dismissal motion (**docket entry 47**) was filed on June 21, 2002 by defendants Consorcio del Suroeste, Rafael Montalvo in his official capacity, the Municipality of Guayanilla and its Mayor in his official capacity, the Municipality of Sabana Grande and its Mayor in his official capacity, the Municipality of San Germán and its Mayor in his official capacity, and the Municipality of Peñuelas and its Mayor in his official capacity. The third dismissal motion (**docket entry 57**), filed on July 8, 2002 by these same defendants, is a duplicate of the second. The basic claim of all movants is that plaintiffs' § 1983 action is foreclosed by the statutory remedies provided in the JTPA, according to the first dismissal motion, and in the WIA, according to the second dismissal motion. Plaintiffs filed their opposition correctly stating that the statutory language relied on by the first movants has been repealed and that none of the relevant sections of the JTPA are, therefore, available to afford relief to plaintiffs. The Court will focus on the arguments made by the movants in the second motion to dismiss based on the WIA, effective as of August 7, 1998, which according to them contains a comprehensive grievance and remedial procedure that reflects the intent of Congress to submit discrimination complaints to the administrative design of the statute.

 It is undisputed that the resolution of this issue depends on Congressional intent. Congress may foreclose a remedy under § 1983 "expressly, by forbidding recourse to § 1983 in the statute itself, or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Blessing v. Freestone,* 520 U.S. 329, 117 S.Ct. 1353, 1360, 137 L.Ed.2d 569 (1997) (*citing Livadas v. Bradshaw,* 512

U.S. 107, 114 S.Ct. 2068, 2083, 129 L.Ed.2d 93 (1994)). As stated in *Middlesex Cty. Sewerage Auth. v. Nat. Sea Clammers,* 453 U.S. 1, 101 S.Ct. 2615, 2623, 69 L.Ed.2d 435 (1981), we must first look "to the statutory language, particularly to the provisions made therein for enforcement and relief" and "[t]hen ... review the legislative history and other traditional aids of statutory interpretation to determine congressional intent." In conducting this inquiry, we are mindful that " § 1983 remains a generally and presumptively available remedy for claimed violations of federal law." *Livadas,* at 2083, and that, when Congress did not expressly curtail a § 1983 action in the provisions of the relevant statute, the parties seeking preclusion of suits under § 1983 "must make the difficult showing that allowing § 1983 actions to go forward ... would be inconsistent with Congress' carefully tailored scheme." *Freestone,* at 1362 (*citing Golden State Transit Corp. v. Los Angeles,* 493 U.S. 103, 110 S.Ct. 444, 449, 107 L.Ed.2d 420 (1989)).

■ We shall first review the relevant statutory provisions of the WIA. The purpose of this Act is stated at its section 106, codified in 29 U.S.C. § 2811. This statute provides for workforce investment activities, through state and local units, that increase employment, earnings and occupational skills attainment of participants resulting in an improved quality of the workforce, a reduction of welfare dependency and enhancement of the productivity and competitiveness of the nation. Consorcio del Suroeste is a local workforce investment system in Puerto Rico and the individual defendants are members of its board.

The other relevant statutory provisions are sections 188(a)(2), (b) and (c), codified at 29 U.S.C. §§ 2938(a)(2), (b) and (c). Section 2938(a)(2)) prohibits, among other things, that an individual be denied employment in the administration of or in connection with any program or activity receiving federal financial assistance under this statutory scheme because of race, color, religion, sex, national origin, age, disability or political affiliation or beliefs. Sections 2938(b) and (c)) of the Act provides for the action to be taken by the Secretary of Labor when he/she finds that a state or recipient of funds has failed to comply with the non-discrimination provisions of § 2938(a)(2) and does not achieve voluntary compliance within a reasonable period of time not to exceed sixty (60) days after notice. The statute provides that "the Secretary **may**—(1) refer the matter to the Attorney General with a recommendation that an appropriate civil action be instituted; or (2) take such other action as may be provided by law." When, in his/her discretion, the Secretary makes such reference to the Attorney General pursuant to § 2938(b)(1)) or when the Attorney General has reason to believe that a state or other recipient of funds is engaged in a pattern or practice of discrimination in violation of, among others, section 2938(a)(2), "the Attorney General **may** bring a civil action in any appropriate district court of the United States for such relief as may be appropriate, including injunctive relief." (Emphasis ours.)

The Act provides in its § 2938(e) for the Secretary of Labor to issue regulations to implement the non-discrimination provisions of § 2938. The regulations promulgated by the Secretary are found in 29 C.F.R. Part 37, Sections 37.1 through 37.115. Subpart D contains the compliance procedures to evaluate compliance with the non-discrimination provisions of the WIA and Subpart E, in its section 37.110, sets forth the enforcement procedures to effect compliance with the non-discrimination provisions of § 2938(a)(2) of the Act. Indeed, the regulations do set forth procedures for processing discrimi-

nation complaints by individuals who allege that a recipient of funds is responsible for the discrimination. However, the second motion to dismiss disregards relevant portions of the regulations and refers to others in an incomplete manner and out of context. For example, it places emphasis on the fact that § 37.85(c)(2) of the regulations provides that where the complaint alleges discrimination on a basis that is prohibited by § 188 (*i.e.* § 2938) of the Act, then the Civil Rights Center (CRC) in the Office of the Assistant Secretary for Administration and Management at the Department of Labor, which is responsible for handling the discrimination complaints, has sole jurisdiction over the complaints. As provided by § 37.85(c)(7), those complaints over which the CRC has sole jurisdiction are based on religion, political affiliation or beliefs, citizenship and/or participation in a WIA financial assisted program or activity. Section 37.85(b) deals with complaints where the only allegation is a charge of individual employment discrimination covered by the WIA and by one or more of the laws listed therein, specifically Title VII of the Civil Rights Act of 1964, the Equal Pay Act of 1963, the Age Discrimination in Employment Act of 1976, as amended, and Title I of the American with Disabilities Act of 1990. In those instances, the complaint is considered, according to the regulations, a "joint complaint," and the director of the CRC "may refer it to the EEOC for investigation and conciliation." All this means is that, contrary to the type of complaint described in § 37.85(b), where the CRC shares jurisdiction with the EEOC of the so-called joint complaint, the complaint of the type based on discrimination because of religion or political affiliation or beliefs contemplated in § 37.85(c)(2) lies within the sole jurisdiction of the CRC. This does not at all reflect a Congressional intent to foreclose recourse to § 1983 by a victim of an alleged discrimination due to his/her political affiliation or beliefs.

Defendants also cite 29 C.F.R. § 37.94 in the second dismissal motion as an indicator of § 1983 preclusion. They claim that the remedies provided therein are comprehensive enough to show that Congress intended that discrimination complaints be handled administratively. Movants isolate this section from the other procedural steps in the proceedings before the director of the CRC. Section 37.94 refers to the initial steps where the director finds a violation of the non-discrimination provisions of the Act and notifies the recipient in his letter of findings or initial determination the steps that recipients "must take within a stated period of time in order to achieve **voluntary compliance**." (Emphasis ours.) Among those steps are providing relief in the form of back pay, hire, reinstatement or other monetary relief.

Defendants failed to consider the subsequent stages covered by the regulations when compliance cannot be secured by voluntary means. The relevant provisions that apply in such a situation are §§ 37.99, 37.100 and 37.110. Section 37.99 provides that if the director concludes that compliance cannot be secured by voluntary means, he or she must either (a) issue a Final Determination, (b) refer the matter to the Attorney General with a recommendation that an appropriate civil action be instituted or (c) take any other action as may be provided by law. If the director issues a Final Determination, § 37.100 states the information that the same must contain, including a notice that if recipient does not comply within ten (10) days of receipt of the Final Determination, one or more of the following consequences may result: (1) its WIA Title I funds, after a hearing, may be terminated, discontinued or withheld in whole or in part, (2) the

Secretary of Labor may refer the case to the Department of Justice with a request to file suit against a grant applicant or recipient, or (3) the Secretary may take any other action provided by law. Section 37.110 repeats consequences (1) and (2) mentioned above. Section 37.110 contemplates the stage in which compliance has not been achieved after issuance of a Final Determination under §§ 37.99 and 37.100. This is the final stage of the proceedings before the CRC yet the only judicial enforcement provided in § 37.110 is a possible referral by the Secretary of the discrimination complaint to the Attorney General with a recommendation that a civil action be filed.

The regulations promulgated by the Secretary of Labor in compliance with 29 U.S.C. § 2938(e) conform, as they must, to the provisions of the WIA on the actions of the Secretary and of the Attorney General when a recipient fails or refuses to comply with the non-discrimination provisions of the Act, specifically 29 U.S.C. § 2938(a)(2). The statute and its regulations do not go beyond discretionary actions that may be taken by the Secretary and by the Attorney General, if the matter is referred. There is no provision under the statute or its regulations for individual enforcement of the rights of an individual who claims a violation of his First Amendment rights due to political discrimination. Although the regulations promulgated by the Secretary to implement the non-discriminatory provisions of the WIA do establish administrative mechanisms meant to ensure compliance by the recipient, if compliance is not achieved because of the recipient's refusal, the only enforcement procedures are termination, denial or withholding of funds to the recipient or a possible referral of the matter to the Attorney General with a recommendation. These are the sole enforcement procedures. The statute does not give the alleged victim the right to sue. The Attorney General may or may not

choose to file a civil action to remedy the alleged discrimination, if the matter is referred by the Secretary.

As observed by the Court in *Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 3468, 82 L.Ed.2d 746 (1984), "[s]ince 1871, when it was passed by Congress, § 1983 has stood as an independent safeguard against deprivations of federal constitutional and statutory rights." Therefore, "[w]e do not lightly conclude that Congress intended to preclude reliance on § 1983." *Id.* "The availability of administrative mechanisms to protect the plaintiff's interests is not necessarily sufficient to demonstrate that Congress intended to foreclose a § 1983 remedy." *Golden State*, 110 S.Ct. at 448–449. The burden is on defendant to show that Congress intended to curtail that remedy. As noted in *Freestone*, 117 S.Ct. at 1362, only twice had the Court found a remedial scheme sufficiently comprehensive to supplant § 1983. The two cases which are the exception are *Sea Clammers, supra,* and *Smith, supra.* As stated in *Sea Clammers* and reaffirmed in *Freestone,* the relevant statutes contained "unusually elaborate enforcement provisions, conferring authority to sue ... on government officials and private citizens" and the "citizen-suit provisions authorize[d] private persons to sue for injunctions to enforce these statutes." *Sea Clammers*, 101 S.Ct. at 2623. In *Smith,* the review scheme of the Act permitted aggrieved individuals to pursue their claims through a carefully tailored administrative and judicial mechanism set out in the statute. That is, the administrative procedures were followed by federal judicial review pursuant to the statute. *Smith,* 104 S.Ct. at 3467; *Freestone,* 117 S.Ct. at 1362–1363. In *Wright v.Roanoke Redevelopment and Housing Authority,* 479 U.S. 418, 107 S.Ct. 766, 772, 93 L.Ed.2d 781 (1987), the Court explained that in *Sea Clammers* and *Smith* a Con-

gressional intent to supplant the § 1983 remedy was evidenced because the statutes at issue themselves provided for private judicial remedies. As in *Wilder v. Virginia Hospital Assn.,* 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990), the Court in *Wright* rejected the argument that the Secretary's power to withhold federal funding from the recipient demonstrated a Congressional intention to prevent the use of § 1983 by individuals to enforce their rights.

A review of the administrative procedures implemented by the Secretary in this case leads us to conclude that they are insufficient to supplant § 1983 for neither the statute nor its regulations contain any private remedy through which aggrieved persons can seek redress. As discussed above, the decision whether or not to bring a civil action lies solely with the Attorney General; it is not within the province of the aggrieved person or complainant. The situation is analogous to that of the complainants in *Freestone* who had no recourse to the courts under the statute although the Secretary of Health could have requested specific performance. The Court there said: "Even assuming the Secretary's authority to sue for specific performance, Title IV–D's administrative enforcement arsenal would not compare to those in *Sea Clammers* and *Smith,* especially if . . . no private actor would have standing to force the Secretary to bring suit for specific performance." *Freestone,* 117 S.Ct. at 1363. We have reviewed the legislative history of the Act (*see* House Conference Report No. 105–659, 1998 U.S.Code Cong. and Adm. News, pp. 332–367) and found nothing that modifies this analysis.

Defendants have made no showing that allowing plaintiffs' § 1983 action to go forward is incompatible with a carefully tailored, comprehensive scheme established by Congress. There is no such compre-hensive scheme outlined in the WIA that would close the door to § 1983 as an independent avenue that plaintiffs may pursue.

For the reasons stated, the various motions to dismiss for lack of subject matter jurisdiction filed by defendants (**docket entries 43, 47 & 57**) are DENIED.

SO ORDERED.