

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Dalma Semidey Ortiz; Noel Vázquez Morales; Sociedad Legal de Gananciales, et al.<br><br>   Demandantes-Recurridos<br><br>v.<br><br>Consorcio Sur-Central<br><br>(ASIFAL)<br><br>   Demandados-Peticionarios | Certiorari<br><br><br>2009 TSPR 184<br><br><br>177 DPR \_\_\_\_ |

Número del Caso: CC-2006-768

   CC-2006-847

Fecha: 22 de diciembre de 2009

Tribunal de Apelaciones:

   Región Judicial de Guayama, Panel XI

Jueza Ponente:

   Hon. Carmen A. Pesante Martínez

Abogado de la Parte Peticionaria:

   Lcdo. Jorge Martínez Luciano

Oficina del Procurador General:

   Lcda. Leticia Casalduc Rabell
   Procuradora General Auxiliar

Abogada de la Parte Recurrida:

   Lcda. Cynthia G. Espendez Santisteban

Materia: Derechos Civiles

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribu ción electrónica se hace como un servicio público a la comunidad.   ?

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Dalma Semidey Ortiz; Noel
Vázquez Morales; Sociedad
Legal de Gananciales, et al.

    Demandantes-Recurridos

v.

Consorcio Sur-Central
(ASIFAL)

    Demandados-Peticionarios

Certiorari

CC-2006-768
CC-2006-847

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco

San Juan, Puerto Rico a 22 de diciembre de 2009.

El presente recurso nos brinda la oportunidad de interpretar por primera vez la Ley Púb. Núm. 105-220, de 7 de agosto de 1998, según enmendada, conocida como Ley de Inversión en la Fuerza Trabajadora, por sus siglas en inglés, *Workforce Investment Act*, en adelante, WIA, 29 U.S.C.A. secs. 2801-2945. En particular, nos compete determinar si dicho estatuto establece un procedimiento de jurisdicción primaria exclusiva para atender reclamaciones (amparadas en la Constitución y legislación estatal) basadas en alegado discrimen en el empleo por razones políticas, por edad y condición física de una empleada que trabaja en un Consorcio municipal.

# I.

La señora Dalma Semidey, en adelante, señora Semidey, es empleada de carrera del Consorcio del Área Sur Central de Inversión para la Fuerza Laboral, en adelante, ASIFAL. Allí funge como Coordinadora de Programa en el Área de Consejería. Por su parte, ASIFAL es una entidad creada en virtud del Artículo 2.001(p) de la Ley Núm. 81 de 30 de agosto de 1991, según enmendada, conocida como Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991, 21 L.P.R.A. 4051(p).[1] Esa entidad se creó con el propósito de administrar los programas de empleo y adiestramientos subsidiados por la WIA, *supra*.

El 5 de octubre de 2004, la señora Semidey, su esposo Ángel Vazquez Morales, la Sociedad de Bienes Gananciales por ambos compuesta y su hijo representado por éstos, incoaron una Demanda ante el Tribunal de Primera Instancia contra ASIFAL, los seis municipios que integran dicho Consorcio, varios empleados del Consorcio municipal y los Alcaldes de los respectivos municipios. La parte recurrida alegó, *inter alia*:

> [Q]ue su patrono ASIFAL Consorcio Sur-Central, la está sometiendo a condiciones de trabajo que no están resguardadas por ningún precepto legal y que el patrono está realizando actos discriminatorios por razón política, edad y por condición médica reportada al Fondo del Seguro del Estado, relacionada con su trabajo, que le

---

[1] Los seis municipios socios de ASIFAL son: Barranquitas, Salinas, Coamo, Santa Isabel, Juana Díaz y Naranjito.

ha ocasionado un impedimento; al modificar su puesto con el propósito de desplazarla de su puesto en ASIFAL, modificar sus tareas, dejar de pagar compensación adecuada, reducción de salarios, dejar de pagar beneficios marginal (sic) tales como diferenciales, ocasionándole daños, sufrimientos, angustias mentales y pérdidas a los demandados.[2]

De la Demanda surge que la acción interpuesta por la parte demandante versó, esencialmente, sobre violación de derechos civiles a la luz de la Constitución de Puerto Rico, Art. II, Secs. 1 y 20, Const. Puerto Rico, L.P.R.A., Tomo 1;[3] reclamación laboral por afectar el derecho propietario de la señora Semidey a ocupar su puesto de carrera como Coordinadora de Programa en el Área de Consejería; reclamación en daños y perjuicios bajo los Artículos 1802 y 1803 del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 5141 y 5142; violación de la WIA, *supra*; violación tanto de la Ley Núm. 100 de 30 de junio de 1959, según enmendada, conocida como Ley contra Discrimen en el Empleo, 29 L.P.R.A. 146, *et. seq.,* como

---

[2] Anejo C, Apéndice 1 del Recurso de *Certiorari* ante nos por parte del Procurador General, Demanda, 6 de septiembre de 2004, pág. 42.

[3] La Sección 1 del Artículo II de nuestra Constitución reza:

"La dignidad del ser humano es inviolable. Todos los hombres son iguales ante la ley. No podrá establecerse discrimen alguno por motivo de raza, color, sexo, nacimiento, origen o condición social, ni ideas políticas o religiosas."

Por su parte, la Sección 20 del susodicho precepto dispone, en lo pertinente a la Demanda:

"El Estado Libre Asociado reconoce, además, la existencia de los siguientes derechos humanos: ...El derecho de toda persona a la protección social en el desempleo, la enfermedad, la vejez o la incapacidad física."

de la Ley Núm. 44 de 2 de julio de 1985, según enmendada, conocida como Ley contra el Discrimen en el Empleo de las Personas con Impedimentos, 1 L.P.R.A. 501, *et seq*; entre otros.[4]

En su alegación responsiva, instada el 25 de abril de 2005, el Municipio de Juana Díaz presentó ante el foro de instancia una solicitud de desestimación. Descansó su petitorio en que la Sección 188(a)(2) de la WIA, 29 U.S.C.A. sec. 2938(a)(2), le otorga al Departamento del Trabajo Federal, jurisdicción primaria exclusiva sobre cualquier reclamación por alegada violación de derechos civiles a ser incoada por participantes o empleados de programas subsidiados bajo la referida legislación federal.[5] Para sostener su posición, señaló, que la reglamentación aplicable a la Sección 188(a)(2), *supra*, --la cual se encuentra en el *Code of Federal Regulations*, 29 C.F.R. 37.1, *et seq.*-- avalaba ese argumento. En esencia adujo que conforme la Sección 37.85(c)(2) del *Code of Federal Regulations*, 29 C.F.R. 3785(c)(2), el *Civil Rights Center*,[6] en adelante, el CRC, es el organismo con jurisdicción exclusiva ante el cual se dilucidarán

---

[4] Anejo C, Apéndice 1 del Recurso de *Certiorari* ante nos por parte del Procurador General, Demanda, 6 de septiembre de 2004, págs. 4-5.

[5] Cabe destacar, que el 26 de agosto de 2005, ASIFAL y los demás municipios demandados, adoptaron los argumentos esbozados por el Municipio de Juana Díaz en su solicitud de desestimación.

[6] Conforme la Sección 37.4 del *Code of Federal Regulations*, *supra*, el CRC está definido como: "... the Civil Right Center, Office of the Assistant Secretary for Administration and Management, U.S. Department of Labor".

las querellas surgidas por alguna práctica prohibida por la Sección 188(a)(2) de la WIA, *supra*. Apuntó, que cualquiera que resulte agraviado por alguna actividad comprendida en la mencionada sección, deberá presentar una Querella ante el CRC o ante el Consorcio, el cual deberá, a su vez, remitir la querella ante el CRC.

En reacción a dicha contestación, el 17 de mayo de 2005, la parte demandante se opuso a la solicitud de desestimación. Argumentó que la citada Sección 188(a)(2) de la WIA aplicaba únicamente a los participantes del sistema subsidiado bajo dicho estatuto y no a los empleados del Consorcio que sirven como recurso para administrar el mismo. Sostuvo que son los participantes y no los empleados los que debían adscribirse a la legislación federal.

*A posteriori*, el 28 de diciembre de 2005, el Municipio de Juana Díaz suplementó su solicitud de desestimación, planteando que los municipios que pertenecen a Consorcios organizados conforme el Artículo 2.001(p) de la Ley Núm. 81, *supra*, no respondían por las acciones discriminatorias cometidas por empleados del Consorcio; y que la parte demandante no podía alegar violación al debido proceso de ley por estar limitado el interés propietario de los empleados públicos a la continuidad en el empleo y no a las funciones inherentes al cargo que ocupaban.

Así las cosas, el 27 de enero de 2006, la parte demandante, se opuso a la solicitud de desestimación suplementaria instada por la parte demandada.

Teniendo todos los argumentos de las partes ante su consideración, el 31 de enero de 2006, el Tribunal de Primera Instancia dictó Sentencia acogiendo todos los fundamentos esbozados por el Municipio de Juana Díaz. De esa forma, desestimó la Demanda instada. Resolvió, citando la Sección 188(a)(2) de la WIA, *supra*, y la Sección 37.85(c)(2) del *Code of Federal Regulations, supra*, que el Congreso de Estados Unidos había dispuesto un mecanismo administrativo de carácter exclusivo para la tramitación de reclamaciones como las de la demandante, por lo que carecía de jurisdicción para atender la acción presentada.

Inconforme con dicho dictamen, la parte demandante acudió ante el Tribunal de Apelaciones. Dicho foro revocó al Tribunal de Primera Instancia. Resolvió que el marco de aplicación de la Sección 188(a)(2) de la WIA, *supra*, se limitaba a reclamaciones de discrimen contra participantes de los programas subsidiados bajo dicha legislación federal, excluyendo a los empleados de los referidos programas. En ese sentido, determinó que la parte demandante podía utilizar la vía judicial para reclamar sus derechos. De esa forma, procedió a devolver

el caso al Tribunal de Primera Instancia para que lo resolviera en los méritos.

Por no estar contestes con la determinación del Tribunal de Apelaciones, ASIFAL y los Municipios de Santa Isabel, Juana Díaz y Coamo, comparecen ante este Foro aduciendo los siguientes errores:

1. **Erró el Tribunal de Apelaciones al determinar que la limitación jurisdiccional contenida en la Sección 188 de WIA no aplica a los empleados de consorcios intermunicipales.**

2. **Erró el TA al revocar la sentencia del TPI sin atender los fundamentos adicionales expresados por dicho foro.**

Asimismo, comparece ante este Tribunal, el Procurador General, en representación del entonces alcalde del Municipio de Santa Isabel, Sr. Ángel M. Sánchez Bermúdez; el alcalde del Municipio de Juana Díaz, Hon. Ramón A. Hernández Torres; el alcalde del Municipio de Coamo, Hon. Juan C. García Padilla; el Director Ejecutivo del Consorcio ASIFAL, Sr. Edgar A. González Moreno; la Directora de Recursos Humanos del Consorcio ASIFAL, Srta. Danyvi N. Santiago Rodríguez; y la Directora de Programa del Consorcio ASIFAL, Sra. Griselle García Hernández(CC-2006-847), señalando como error lo siguiente:

1. **Cometió error el Tribunal de Apelaciones al hacer caso omiso del lenguaje claro de la sección 188 de la ley WIA y su Reglamento, los cuales conjuntamente disponen diáfanamente que su aplicación será tanto a prácticas discriminatorias relacionadas a los participantes o beneficiarios de un programa subsidiado con fondos WIA, como a prácticas**

**de empleo relacionadas a la administración de los programas.**

Vistas ambas peticiones de *certiorari*, acordamos consolidar y expedir las mismas para efectos de adjudicación. Con el beneficio de la comparecencia de todas las partes, procedemos a resolver las controversias planteadas.

## II.

*A priori*, debemos atender el planteamiento de índole jurisdiccional esbozado tanto por el Procurador General como por ASIFAL. Véanse, *Pérez Rosa v. Morales Rosado*, res. el 28 de septiembre de 2007, 172 D.P.R.___ (2007), 2007 T.S.P.R. 171, 2007 J.T.S. 176; *Autoridad Sobre Hogares v. Sagastivelza*, 71 D.P.R. 436, 439 (1950). En síntesis, ambas partes sostienen que la Demanda debe ser desestimada por falta de jurisdicción. Alegan, esencialmente, que la Sección 188(a)(2) de la WIA, *supra*, y la Sección 37.85(c)(2) del *Code of Federal Regulations*, *supra*, disponen un procedimiento administrativo que constituye el mecanismo con jurisdicción primaria exclusiva para aquellos participantes y/o empleados de programas subsidiados bajo el estatuto federal que aleguen haber sido objeto de discrimen en su relación de empleo o como beneficiarios de tales programas. Además, tanto ASIFAL como el Procurador General, sostienen que la Sección 188(a)(2) de la WIA, *supra*, hace referencia tanto

a prácticas discriminatorias relacionadas a los participantes o beneficiarios de un programa subsidiado con fondos provenientes de la WIA, como a prácticas de empleo relacionadas a la administración o de algún modo conectadas con programas de la WIA.

De otro lado, la parte demandante no aduce oposición en sus alegatos, a que la Sección 188(a)(2) de la WIA, *supra*, sea de aplicación tanto a los empleados como a los participantes de los programas subsidiados por dicha ley. Más bien apunta que, el lenguaje de la Sección 188(a)(2) de la WIA, *supra*, no es claro, por lo que no está impedida de presentar ante los tribunales de Puerto Rico una Demanda, en la cual solicite un remedio al amparo de la legislación y Constitución local por alegado discrimen político, por edad y condición física.

A la luz de dichas posturas, para determinar si la WIA, *supra*, establece un procedimiento de jurisdicción primaria exclusiva debemos resolver si la Sección 188 de la WIA, *supra*, aplica tanto a los participantes como a los empleados de los programas subsidiados bajo dicho estatuto.

**A.**

Como afirman los profesores Muñiz-Argüelles & Fraticelli-Torres, en su obra *Investigación Jurídica*, "[l]a exégesis es el proceso mediante el cual el intérprete pretende tener el verdadero sentido y alcance

de la ley". L. Muñiz y M. Fraticelli, *Investigación Jurídica*, 3ra ed., Bogotá-Colombia, Ed. Temis S.A., 2000, pág. 266. Véase, además, Ch. Zeno y V. Bermúdez, *Tratado de Derecho del Trabajo*, 1ra ed., San Juan-Puerto Rico, Publicaciones JTS, 2003, T. I, sec. 4.1, pág. 61. Por eso, a la hora de dilucidar el significado y alcance de una disposición estatutaria, es menester acudir a las normas de interpretación que nuestro ordenamiento provee.

Una de las reglas de hermenéutica bien asentada en nuestra jurisdicción es que cuando la ley es clara y libre de toda ambigüedad se ha de atender al tenor de su letra. 31 L.P.R.A. sec. 14. El Tribunal Supremo Federal ha establecido la misma norma de interpretación al señalar: "when the intent of Congress is clear [from the statutory text], that is the end of the matter". *Chevron U.S.A. v. NRDC*, 467 U.S. 837, 842 (1984). De la misma forma, dicho Foro ha expresado que: "[i]n matter of statutory construction, it is appropiate to begin with the language of the statute itself". *N.W. Airlines, Inc. v. Transport Workers Union*, 451 U.S. 77, 91 (1981). Cónsono con lo anterior, hemos sostenido que las leyes no han de ser interpretadas tomando aisladamente algunas de sus secciones, párrafos, u oraciones, sino que deben serlo tomando en consideración todo su contexto. *Descartes v. Tribunal de Contribuciones*, 71 D.P.R. 248, 253 (1950). El Tribunal Supremo de Estados Unidos también

ha reconocido dicho principio al expresar: "...[it is] a cardinal rule that a statute is to be read as a whole since the meaning of statutory language, plain or not, depends on context". *King v. St. Vincent´s Hospital*, 502 U.S. 215, 221 (1991); *Massachusetts v. Morash*, 490 U.S. 107, 115 (1989). Véase, además, *Shell Oil Co. v. Iowa Dept. of Revenue*, 488 U.S. 19, 26 (1988).

Guiados por los principios plasmados y en aras de despejar toda duda con relación al alcance de la Sección 188(a)(2) de la WIA, *supra*, procedemos a analizarla contextualmente.

En el 1998 el Congreso de los Estados Unidos promulgó la WIA con el objetivo de promover la inversión en la fuerza trabajadora propiciando el empleo y la retención en el empleo, así como mejorar el adiestramiento ocupacional de los participantes como mecanismo para reducir el desempleo. 29 U.S.C.A. sec. 2811.[7] Véanse, además, *Santana v. Gobernadora*, 165 D.P.R. 28, 34, n. 2 (2005); *Diversified Educ. Training & Mfg. Co. v. City of Wichita*, 473 F. Supp. 2d 1140, 1142, n. 5 (2007).

---

[7] La Sección 2811 de la WIA reza:

> "The purpose of the WIA is to: provide workforce investment activities, through statewide and local workforce investment systems, that increase the employment, retention, and earnings of participants, and increase occupational skill attainment by participants, and, as a result, improve the quality of the workforce, reduce welfare dependency, and enhance the productivity and competitiveness of the Nation."

La WIA proporciona el esquema de un sistema integral de inversión en la fuerza trabajadora y autoriza la asignación de los fondos necesarios para desarrollarlo. El sistema tiene como finalidad orientar a los participantes --adultos, trabajadores desplazados y jóvenes[8]-- en la búsqueda de información y servicios para manejar sus carreras a través de la operación de centros multigestionales de empleo (*one-stop centers*). 29 U.S.C.A. sec. 2841. Mediante estos centros los usuarios pueden acceder a servicios esenciales de empleo (*core services*), 29 U.S.C.A. sec. 2864(d)(2), o pueden ser referidos para otro tipo de asistencia, tales como servicios intermedios o de entrenamiento. 29 U.S.C.A. sec. 2841. Además, la WIA autoriza al gobernador de cada estado a crear una junta estatal de inversión en la fuerza trabajadora (*workforce investment board*) que le asista en el desarrollo, *inter alia*, de un plan estratégico de cinco años y la supervisión del sistema. 29 U.S.C.A. secs. 2821-2822. A su vez, el Gobernador, en consideración a distintos criterios establecidos en dicha ley, debe designar áreas locales de inversión en la

---

[8] La Ley tiene como objetivo la universalidad de los servicios de empleo. Por tal motivo, todas las personas mayores de 18 años de edad son elegibles para los servicios esenciales. 29 U.S.C.A. sec. 2801(1). No obstante, para ser beneficiario de los servicios intensivos o de entrenamiento existen unos requisitos particulares. 29 U.S.C.A. sec. 2864(d)(3)-(4). Asimismo, son elegibles (1) los trabajadores desplazados, 29 U.S.C.A. sec. 2801(9) y (2) los jóvenes entre 14 y 21 años de edad de bajos ingresos que cumplan con alguno de los seis (6) criterios establecidos en la ley, 29 U.S.C.A. sec. 2801(13), u otras disposiciones. 29 U.S.C.A. sec. 2854(c)(5).

fuerza trabajadora (*local workforce investment areas*) --con sus respectivas juntas-- que desarrollarán un plan local consistente con el estatal, entre otras funciones. 29 U.S.C.A. secs. 2831-2833. Con tales objetivos, los fondos otorgados son asignados en porcentajes según el grupo de participantes y se dividen principalmente entre las áreas locales y las actividades estatales. 29 U.S.C.A. secs. 2852-2872.

Con el propósito de administrar los fondos WIA, el entonces Gobernador de Puerto Rico, Hon. Pedro Rosselló, designó, por medio de la Orden Ejecutiva 2000-06 promulgada en mayo de 2000,[9] como depositario y administrador de tales fondos al Consejo de Desarrollo Ocupacional y Recursos Humanos del Departamento del Trabajo y Recursos Humanos de Puerto Rico.[10] Véase, *Santana v. Gobernadora*, *supra*, págs. 34, 41; *Santana v. Calderón*, 342 F.3d 18, 20 (1er Cir. 2003).

Con el fin de recibir parte de los fondos WIA asignados a Puerto Rico, los municipios se han organizado

---

[9] La Orden Ejecutiva 2000-06 indica lo siguiente: "The Executive Director of the Occupational Development and Human Resources Council shall be responsible and accountable to the State Board for the receipt, custody an disbursement of the federal funds received pursuant to WIA and shall post fidelity bond prescribed by the laws of Puerto Rico for public employees". Véase, *Santana v. Gobernadora*, *supra*, n. 6, pág. 41.

[10] El Consejo de Desarrollo Ocupacional y Recursos Humanos del Departamento del Trabajo y Recursos Humanos de Puerto Rico fue creado bajo la Ley Núm. 97 de julio 23 de 1998, según enmendada, conocida como Ley de Sistema de Formación Tecnológico-Ocupacional, 18 L.P.R.A. sec. 1581.

en Consorcios a tenor del Art. 2.001(p) de la Ley Núm. 81, *supra*.[11] Así, surge como un hecho incuestionable que ASIFAL es un organismo intermunicipal --organizado por los municipios de la región de conformidad con el Art. 2.001(p) de la Ley Núm. 81, *supra*-- creado para administrar programas y oportunidades de empleo y adiestramiento laboral subsidiados por la WIA, *supra*.[12] En ese sentido, ASIFAL, conforme el *Code of Federal Regulations*, es un recipiente de fondos WIA, al que la ley denomina como *Local Workforce Investment Area Grant Recipient*.[13] 29 C.F.R. sec. 37.4.[14]

---

[11] El Art. 2.001(p) de la Ley Núm. 81, *supra*, lee:

> Crear organismos intermunicipales que permitan a dos (2) o más municipios identificar problemas comunes, planificar y desarrollar actividades o servicios conjuntamente, en beneficio de los habitantes. La organización de estos se realizará mediante convenio intermunicipal suscrito por los alcaldes, con la aprobación de por los menos dos terceras partes de las legislaturas concernidas. Una vez aprobado el convenio intermunicipal, se constituye lo que se conocerá como consorcio, el cual tendrá existencia y personalidad jurídica propia, separada del municipio, a tenor con lo dispuesto para las sociedades en el Código Civil de Puerto Rico de 1930. Dichas disposiciones aplicarán en todo aquello que no sea contrario a las disposiciones de este subtítulo u otras leyes locales y federales que le rigen. Las operaciones de los consorcios intermunicipales estarán sujetos a la auditoría de la Oficina del Contralor de Puerto Rico... 21 L.P.R.A. sec. 4051 (Sup. 2008).

[12] Anejo C, Apéndice 1 y 2 del *Certiorari* presentado por el Procurador General ante nos, Demanda y Solicitud de Desestimación, 6 de septiembre de 2004 y 19 de abril de 2005, págs. 5 y 3 respectivamente.

[13] La definición de *Local Workforce Investment Area Grant Recipient* lee: "...means the entity that receives WIA Title I financial assistance for a Local Workforce Investment Area directly from the Governor and disburse those funds for workforce investment activities". 29 C.F.R. sec. 37.4.

Tomando como punto de partida lo que antecede, la Sección 188(a)(2) de la WIA lee:

> Prohibition of discrimination regarding participation, benefits and **employment**.
>
> "No individual shall be excluded from participation in, denied the benefits of, subjected to discrimination under, or denied employment in the administration of or in connection with, any such program or activity because of race, color, religion, sex (except as otherwise permitted under title IX of the Education Amendments of 1972), national origin, age, disability, or political affiliation or belief. " (Énfasis suplido). 29 U.S.C.A. sec. 2938 (a)(2).

De una lectura de esta sección, podemos concluir que la misma no excluye de su aplicación a los empleados que trabajan en la administración o que están relacionados con los programas y actividades subsidiadas bajo la WIA, *supra*. Del título de la disposición, se puede desprender que la prohibición de discrimen allí preceptuada comprende la participación, los beneficios y el empleo. Además, la citada sección comienza expresando que "ningún individuo" debe ser excluido de participar, o negársele los beneficios, o negársele empleo en los programas subsidiados por la WIA, por las razones discriminatorias

---

[14] El *Code of Federal Regulations* define como recipiente de fondos WIA: "[A]ny entity to which financial assistance under WIA Title I is extended, either directly from the Department or through the Governor or another recipient (including any successor, assignee, or transferee of a recipient), but excluding the ultimate beneficiaries of the WIA Title I-funded program or activity. In instances in which a Governor operates a program or activity, either directly or through a State agency, using discretionary funds apportioned to him or her under WIA Title I (rather than disbursing the funds to another recipient), the Governor is also a recipient. Recipient includes, but is not limited to: ...local workforce investment area grant recipient." 29 C.F.R. sec. 37.4

allí consignadas. Al así leer, la prohibición no se remite únicamente al que participe. Por el contrario, denota la inclusión del que se beneficie o trabaje en algún programa subsidiado por la WIA, *supra*. De hecho, la frase *"employment in the administration of"* puede perfectamente interpretarse de modo que incluya a los empleados de las entidades que administran y distribuyen fondos WIA.

En la misma dirección, la Sección 181 de la WIA, 29 U.S.C.A. sec. 2931, la cual abarca violaciones bajo la Sección 188(a)(2) de la WIA, *supra*, en su inciso (c)(1) da a entender que la prohibición de discrimen contenida en la mencionada sección se extiende a las prácticas discriminatorias contra los empleados al rezar: "[e]ach State and local area receiving an allotment under this chapter shall establish and maintain a procedure for grievances or complaints alleging violations of the requirements of this chapter from participants and **other interested or affected parties**...".(Énfasis suplido). Así también, dicha sección en su inciso (c)(3), dispone como uno de los remedios a concederse ante la violación de alguna disposición de la WIA, *supra*, lo siguiente: "...reinstatement of an employee, payment of lost wages and benefits, and reestablishment of other relevant terms, conditions, and privileges of employment". Sección 181(c)(3) de la WIA, *supra*.

De otra parte, la reglamentación aplicable a la Sección 188 de la WIA, *supra*,[15] según promulgada por el Secretario del Trabajo Federal conforme el inciso (e) de dicha sección,[16] apunta hacia la inclusión de los empleados en la prohibición discriminatoria. Dicho cuerpo reglamentario le requiere a los recipientes de fondos WIA (en este caso el Consorcio ASIFAL) que establezcan un procedimiento local de agravios. 29 C.F.R. secs. 3723, 3776.[17] Como parte de ese procedimiento, los recipientes deben informar de manera inicial y continua sobre sus políticas antidiscriminatorias a sus empleados. 29. C.F.R. sec. 37.30. Además, "cualquier persona" agraviada por alguna acción comprendida en la Sección 188 podrá someter una Querella ante el CRC o ante el recipiente de fondos: "**[a]ny person** who believes that he or she has been subjected to discrimination may file a complaint either with the recipient or the CRC." (Énfasis suplido). 29 C.F.R. secs. 37.70-37.72. Asimismo, la Sección 37.16(a)(1) del *Code of Federal Regulations*, 29 C.F.R. 37.16 (a)(1), establece que como condición para recibir

---

[15] Esa reglamentación está recogida en el *Code of Federal Regulations*, 29 C.F.R. secs. 37.1-37.115.

[16] La Sección 188(e) establece "[t]he Secretary shall issue regulations necessary to implement this section not later than one year after August 7, 1998. Such regulations shall adopt standards for determining discrimination and procedures for enforcement that are consistent with the Acts referred to in a subsection (a)(1) of this section, as well as procedures to ensure that complaints filed under this section and such Acts are processed in a manner that avoids duplication of effort."

[17] Como ya expresáramos, surge de los autos de forma no controvertida, que el recipiente de fondos federales en el caso de autos es ASIFAL.

fondos WIA, cada solicitante de dichos fondos deberá asegurar en su aplicación que cumplirá con la disposición antidiscriminatoria subsumida en la Sección 188 de la WIA, *supra*, sobre la cual se dice lo siguiente:

> As a condition to the award of financial assistance from the Department of Labor under Title I of WIA, the grant applicant assures that it will comply fully with the nondiscrimination and equal opportunity provisions of the following laws: Section 188 of the Workforce Investment Act of 1998 (WIA), which prohibits discrimination against **all individuals** in the United States on the basis of race, color, religion, sex, national origin, age, disability, political affiliation or belief, and against beneficiaries on the basis of either citizenship/status as a lawfully admitted immigrant authorized to work in the United States or participation in any WIA Title-financially assisted program or activity. (Énfasis suplido.) Sección 31.16(a)(1) del *Code of Federal Regulations*, *supra*.

Igualmente, la Sección 37.30 del *Code of Federal Regulations*, *supra*, indica: "[t]he recipient must not discriminate in any other following areas: ...Making employment decisions in the administration of, or in connection with, such a program or activity". Ello, hace razonable nuestra conclusión de que la prohibición de discrimen en contra de los recipientes de fondos WIA protege a los empleados.

Cabe destacar, que el Consejo de Desarrollo Ocupacional y Recursos Humanos del Departamento del Trabajo y Recursos Humanos de Puerto Rico, emitió el Memorial Administrativo Número WIA 3-2003 de 31 de

octubre de 2003, en el cual hace referencia a la Sección 188 de la WIA, *supra.* Este está dirigido a todas las áreas locales de inversión, (conocidas en la ley federal, como *Local Workforce Investment Area*), a sus Directores Ejecutivos y a todo el que recibe fondos bajo el Título I de la WIA, *supra*. Dicho memorial expresa, *inter alia*, que:

> se prohíbe a toda persona que reciba ayuda financiera federal bajo el Título I de WIA que discrimine contra cualquier individuo, en Puerto Rico o en los Estados Unidos, que solicite participación en las distintas actividades y programas de adiestramiento, búsqueda y colocación de empleo o que haya sido empleado bajo alguno de los programas subvencionados con fondos WIA, por razón de su raza, color, religión, sexo, origen nacional, edad, impedimento físico o mental, afiliación política o creencias.[18]

Como podemos observar, de este memorial surge que la política pública y los procedimientos que se emiten conforme la WIA, *supra,* y su reglamentación, para la implantación de la política de no-discriminación e igualdad de oportunidades, aplica al que haya sido empleado bajo alguno de los programas subvencionados bajo la WIA, *supra*.[19]

Por todo lo antes expuesto, colegimos que de la WIA, *supra*, y su reglamentación aplicable, la prohibición de discrimen recogida en la Sección 188(a)(2) de la WIA,

---

[18] Anejo D, anejo 1 del *Certiorari* presentado por el Procurador General ante nos, Memorial Administrativo Número WIA-3-2003, 31 de octubre de 2003, pág. 145.

[19] *Íd.*, pág. 146.

*supra*, se extiende tanto a las prácticas discriminatorias contra los participantes como a los empleados de programas subsidiados bajo dicho estatuto. Por ende, dicha disposición le aplica a la señora Semidey al ser empleada del Consorcio Municipal ASIFAL.

**B.**

Superada la controversia relacionada al alcance de la Sección 188(a)(2) de la WIA, *supra*, en cuanto a su aplicación tanto a los empleados como a los participantes de los programas subsidiados bajo dicha ley, nos corresponde resolver si la WIA, *supra*, establece un procedimiento de jurisdicción exclusiva para canalizar los reclamos de una empleada que solicita un remedio bajo la Constitución y legislación estatal por alegado discrimen en el empleo de índole político, por edad y condición física.

En el pasado nos hemos expresado en cuanto al problema de determinar cual es el foro con jurisdicción para ventilar una controversia. Es en ese sentido se ha desarrollado por vía jurisprudencial la doctrina de la jurisdicción primaria. Sobre esta hemos manifestado:

> La doctrina de jurisdicción primaria atiende la jurisdicción original para considerar una reclamación. Consiste de dos vertientes: jurisdicción primaria exclusiva y jurisdicción primaria concurrente. En la primera, la ley dispone que el organismo administrativo tendrá jurisdicción inicial exclusiva para examinar la reclamación. La jurisdicción concurrente se da cuando la ley permite que la reclamación se

inicie bien en el foro administrativo o en el judicial. *Rivera Ortiz v. Mun. de Guaynabo*, 141 D.P.R. 257, 267 (1996). Véase, además, M. A. Velázquez, *Análisis del Término 2000-01: Del Tribunal Supremo de Puerto Rico: Derecho Aministrativo*, 71 Rev. Jur. U.P.R. 299, 305-306 (2002).

En *Ferrer Rodríguez v. Figueroa*, 109 D.P.R. 398, 402 (1980), aclaramos que la doctrina de jurisdicción primaria aplica verdaderamente cuando hay jurisdicción concurrente entre el foro administrativo y el judicial. Veánse, además, *Rivera Ortiz v. Mun. de Guaynabo*, *supra*, pág, 267; *Aguilú v. P.R. Parking*, 122 D.P.R. 261, 266 (1988). Esto es debido a que cuando una agencia y los tribunales tienen jurisdicción concurrente realmente surge la necesidad de armonizar las funciones adjudicativas. Así, la doctrina solo nos ayuda a concluir cual de las vías, la administrativa o la judicial, se debe seguir en primer término a pesar de que ambos foros poseen jurisdicción legal. *Rivera Ortiz v. Mun. de Guaynabo*, *supra*.

Ahora bien, si el estatuto le confiere la jurisdicción al organismo administrativo se trata de una jurisdicción estatutaria (exclusiva). D. Fernández, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da ed., Colombia, Forum, 2001, n. 1, sec. 8.3, pág. 437. El concepto de jurisdicción estatutaria o exclusiva guarda relación con la jurisdicción primaria concurrente pero es distinto en

cuanto a su alcance y naturaleza. Véase, R. J. Pierce, Jr., *Administrative Law Treatise*, 4ta ed., New York, Aspen Law & Business, 2002, T. II, sec. 15.3, pág. 982. En la jurisdicción exclusiva se trata de situaciones en que no es de aplicación la doctrina de jurisdicción primaria concurrente debido a que la propia ley aclara que no existe esta última. Es decir, el propio estatuto establece una jurisdicción exclusiva. Véase, *Colón v. Méndez*, 130 D.P.R. 433 (1992). En tales casos estamos frente a un mandato legislativo. De ahí, que cuando un estatuto le confiere de manera expresa la jurisdicción a un órgano administrativo sobre determinado tipo de asuntos, los tribunales no tendrán autoridad para dilucidar el caso en primera instancia. *Rivera Ortiz v. Mun. de Guaynabo*, *supra*, pág. 268. Claro está, la jurisdicción primaria exclusiva no soslaya la revisión judicial de la cual puede ser objeto posteriormente la decisión del organismo. *Íd*; *Junta de Directores v. Fernández*, 136 D.P.R. 223 (1994). A fin de cuentas, la responsabilidad primaria de resolver la cuestión jurisdiccional recae en los tribunales. D. Fernández, *Análisis del Término 2001-02 del Tribunal Supremo de Puerto Rico: Derecho Administrativo*, 72 Rev. Jur. U.P.R. 355, 361 (2003).

En el caso de autos lo medular es determinar si es de aplicación la doctrina de jurisdicción primaria

exclusiva o estatutaria. El planteamiento presentado por la parte demandada se reduce a determinar si la Sección 188(a)(2) de la WIA, *supra*, establece un procedimiento administrativo exclusivo en casos donde se le impute a una parte que recibe fondos WIA haber cometido una práctica discriminatoria prohibida por la referida sección. Véase, *Rovira Pales v. P.R. Telephone Co.*, 96 D.P.R. 47, 48 (1968).

Por otro lado, debido a que tenemos ante nuestra consideración una ley federal que no habíamos interpretado y cuya sección en controversia --188(a)(2)-- tampoco ha sido interpretada por el Tribunal Supremo Federal, debemos examinar también, si el Congreso de los Estados Unidos, al promulgar la WIA, *supra*, tuvo la intención de ocupar el campo. Es decir, si dicha ley creó un óbice jurisdiccional conforme la doctrina de campo ocupado (*preemption*),[20] que impide a los tribunales estatales atender reclamaciones de discrimen conforme la

---

[20] El Artículo VI de la Constitución Federal contiene la llamada "cláusula de la supremacía" la cual dispone que la Constitución federal, los tratados federales y las leyes federales serán la ley suprema de la nación. Art. IV, Const. EE.UU., L.P.R.A. Tomo 1. "Es en virtud de esta cláusula que se ha elaborado lo que se conoce como la doctrina del campo ocupado. En apretada síntesis, esta doctrina jurisprudencial postula que, aún cuando el Congreso haya legislado en el ejercicio de la facultad que le ha sido concedida en uno de los poderes enumerados, no se entenderá que esa ley federal ha desplazado la legislación de un estado sobre esa misma materia a menos que la ley federal expresamente estipulara lo contrario. El desplazamiento de la ley del estado también se produciría si el interés federal en la materia reglamentada fuera tan esencial que no podría justificarse la existencia de legislación estatal conflictiva en esa misma área." Miguel Velázquez Rivera, *Validez Legal de la Reglamentación por la Asamblea Legislativa de la importación, venta y posesión en Puerto Rico de perros de la raza Pit Bull*, 63 Rev. Jur. U.P.R. 1, 16 (1994).

Sección 188(a)(2) de la WIA, *supra*. Por eso, en el presente recurso, la determinación de jurisdicción exclusiva es consustancial a la de campo ocupado. De determinar que la WIA, *supra*, establece un procedimiento administrativo exclusivo para atender acciones como la de autos, el campo estaría ocupado y careceríamos de jurisdicción sobre la materia[21] para considerar el recurso aquí presentado por ser un asunto federal.[22]

El Tribunal Supremo de los Estados Unidos ha resuelto que los tribunales estatales pueden asumir jurisdicción sobre la materia de una causa de acción federal excepto cuando existe un estatuto del Congreso que dispone lo contrario o cuando existe una incompatibilidad incapacitante entre el pleito federal y su adjudicación en las cortes estatales. *Leyva v.*

---

[21] La jurisdicción sobre la materia es el poder que tiene un tribunal para atender las clases de pleitos que se le presentan. Bryan A. Garner, *Black's Law Dictionary*, 8va ed., United States, West, 2004, pág. 870. (Traducción nuestra).

[22] Aunque la parte peticionaria, en el caso de autos, no levantó como defensa la ausencia de jurisdicción sobre la materia para atender el reclamo a base de la doctrina de campo ocupado, es claro que lo que está planteado es una cuestión de jurisdicción sobre la materia. Véase, Regla 10.2 y 10.8(c) de Procedimiento Civil, 32 L.P.R.A. Ap. III. Precisamente, bajo la Regla 10.8(c) de Procedimiento Civil, *supra*, se puede desestimar una reclamación por ser de jurisdicción de una agencia administrativa o de la esfera federal. R. Hernandez Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 4ta ed., San Juan, LexisNexis, 2007, sec. 5109, pág. 234. Por eso, debemos resolver si los tribunales locales tienen el poder o autoridad para resolver en los méritos la cuestión o asunto planteado ante nos. Véanse, *A.S.G. v. Mun. San Juan*, res el 30 de junio de 2006, 168 D.P.R. ___ (2006), 2006 T.S.P.R. 113, 2006 J.T.S. 124; *Rodríguez v. Overseas Military*, 160 D.P.R. 270, 277. No podemos olvidar que en asuntos de jurisdicción sobre la materia, los tribunales tienen el ineludible deber de auscultar su propia jurisdicción pudiendo determinar *motu proprio* que no tienen jurisdicción sobre la materia. Véanse, *Pagán v. Alcalde Mun. de Cataño*, 143 D.P.R. 314, 326 (1997); *Vázquez v. A.R.P.E.*, 128 D.P.R. 513, 537 (1991).

*Policías*, 132 D.P.R. 489, 499-500 (1993); *Howlett v. Rose*, 496 U.S. 356 (1990); *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 477-478 (1981); *Martínez v. California*, 444 U.S. 277, 283, n. 7 (1980). De ahí, que como regla general los tribunales estatales tienen jurisdicción para atender todo asunto al amparo de las leyes estatales y jurisdicción concurrente con los tribunales federales para atender asuntos que surjan bajo el palio de las leyes federales. *González Sotomayor v. Mayaguez Resort & Casino*, res. 10 de septiembre de 2009, ___ D.P.R. ____ (2009), 2009 T.S.P.R. 140, 2009 J.T.S. ___; *Rodríguez v. Overseas Military*, *supra*; *Cintrón v. Díaz*, 159 D.P.R. 314, 319 (2003); *Acevedo Díaz v. Srio. Servicios Sociales*, 112 D.P.R. 256, 259 (1982); *Roberts v. U.S.O. Council fo P.R.*, 145 D.P.R. 58, 69 (1998); *Yellow Freight Sys., Inc. v. Donelley*, 494 U.S. 820, 823 (1990); *Gulf Offshore Co. v. Mobil Oil Corp.*, *supra*, pág. 477. *A contrario sensu*, los tribunales estatales carecen de jurisdicción sobre algún asunto federal únicamente cuando el Congreso de Estados Unidos expresamente dispone esa exclusividad jurisdiccional, o cuando es palmaria la intención del Congreso de privar a los tribunales estatales de jurisdicción sobre dicho asunto federal. *Cintrón v. Díaz*, *supra*. Es decir, "[l]a jurisdicción federal exclusiva es un asunto en extremo excepcional". *Íd*; *Acevedo v. Srio. Servicios Sociales*, *supra*.

La doctrina de ocupación del campo se ha desarrollado para evitar conflictos regulatorios y así fomentar una política uniforme. *Rivera v. Security Nat. Life Ins. Co.*, 106 D.P.R. 517, 523 (1977). Sobre dicha doctrina, hemos expresado que los problemas jurisdiccionales tienen dos vertientes, a saber: 1) la legislativa; 2) y la adjudicativa. Así, en *González Sotomayor v. Mayagüez Resort & Casino*, *supra*, citando lo resuelto en *Rodríguez v. Overseas Military*, *supra*, pág. 279, señalamos que: "[e]l concepto de jurisdicción legislativa versa sobre quién tiene la facultad para regular, mediante legislación, determinada materia, hecho o situación... La jurisdicción legislativa se refiere a qué ley aplica a determinada controversia... Mientras que, por otro lado, la jurisdicción judicial se refiere a cuál tribunal (estatal o federal) está autorizado para atender en las controversias que se susciten dentro del enclave".

Una vez proyectados los preceptos sobre jurisdicción primaria exclusiva y ocupación del campo, nos compete analizar la WIA, *supra*, bajo el crisol de tal normativa con el objeto de determinar si las reclamaciones que surgen bajo la Sección 188(a)(2) de la WIA, *supra*, tienen que ser conducidas por el procedimiento administrativo que establece dicha ley y su reglamentación aplicable o,

*a contrario sensu*, pueden llevarse por la vía judicial estatal.

## c.

En síntesis, ASIFAL arguye que la WIA, *supra*, establece un procedimiento de jurisdicción primaria exclusiva cuando se analiza junto con su reglamentación aplicable. Para sostener su contención, ASIFAL aduce que el *Code of Federal Regulations* evidencia tal conclusión al disponer que: el Secretario del Trabajo Federal nombrará un funcionario para atender las Querellas presentadas por discrimen contra empleados y participantes de programas subsidiados bajo la WIA, *supra*, quien, además, estará a cargo del CRC; y que a la luz de esa normativa, cualquiera que resulte agraviado por alguna actividad comprendida en la Sección 188(a)(2), *supra*, deberá presentar una Querella ante el CRC o ante el Consorcio, quién deberá remitir la Querella ante el CRC. Apunta también que, conforme la Sección 37.85(c)(2) del *Code of Federal Regulations*, *supra*, el CRC es el organismo con jurisdicción exclusiva ante el cual se dilucidarán las Querellas según el proceso allí delineado. Veamos por parte dichos argumentos.

Conforme mencionáramos, la Sección 188(a)(2) de la WIA, *supra*, dispone que ningún individuo deberá ser discriminado por filiación o creencia política, edad, entre otros: "[n]o individual shall be [...] subjected to

discrimination, [...] because of age, disability, political affiliation or belief". Sobre ésta, la WIA, *supra*, dispone cuáles son las acciones que debe llevar a cabo el Secretario del Trabajo Federal cuando un estado o recipiente de fondos WIA no cumple voluntariamente con dicha sección, ni logra el cumplimiento voluntario de la misma por parte del infractor (recipiente) dentro de un periodo de tiempo cierto. Sección 188(b) y (c) de la WIA, 29 U.S.C.A. secs. 2938(b) y (c). En específico, el Secretario del Trabajo Federal puede referir el caso al *Attorney General* con una recomendación para que inste una acción civil o tomar por sí mismo cualquier otra acción procedente en ley; cuando el Secretario del Trabajo Federal, dentro de su discreción, le refiere el caso al *Attorney General* o cuando éste último tenga razones para creer que un estado u otro recipiente de fondos está cometiendo acciones discriminatorias conforme la Sección 188(a)(2), *supra*, podrá instar una acción civil en cualquier Tribunal de Distrito de los Estados Unidos. Sección 188(b) y (c) de la WIA, *supra*.

Por su parte, el *Code of Federal Regulations, supra*, requiere a los recipientes de fondos federales que establezcan un procedimiento local de agravios. Secs. 3723, 3776 del *Code of Federal Regulations*, *supra*.[23]

---

[23] Como ya expresáramos, surge de los autos de forma no controvertida, que el recipiente de fondos federales en el caso de autos es el Consorcio Sur-Central (ASIFAL).

Dichos recipientes deberán nombrar un *Equal Opportunity Officer* que servirá de enlace entre el recipiente (Consorcio) y el CRC y será el encargado de asegurarse de que no se violen las disposiciones anti discriminatorias de la WIA, *supra*. 29 C.F.R. secs. 37.23, 37.25. De esa forma, cualquier persona agraviada por alguna acción comprendida en la Sección 188 de la WIA, *supra*, deberá someter una Querella ante el CRC o ante el recipiente de fondos quien remitirá la acción al CRC. Secs. 37.70-37.72 del *Code of Federal Regulations*, *supra*. Ahora bien, si el director del CRC encuentra que ha habido una violación, le notificará al recipiente de fondos WIA los pasos que deberá tomar dentro de un periodo de tiempo cierto para que cumpla voluntariamente lo que se le requiera. 29 U.S.C.A. sec. 37.94. Sin embargo, cuando el director del CRC entienda que el cumplimiento no puede asegurarse por medios voluntarios entonces deberá: 1) o emitir una determinación final; 2) o referir el caso al *Attorney General* con una recomendación para que se incoe una acción civil; 3) o tomar cualquier otra acción procedente en ley. 29 C.F.R. sec. 37.99. Si el director emite una determinación final, ésta deberá contener un apercibimiento de que si el recipiente no cumple dentro de los diez (10) días siguientes de haber recibido la determinación final, ello podrá acarrear una o más de las siguientes consecuencias: los fondos WIA pueden ser

terminados, descontinuados o retenidos en todo o en parte; el Secretario del Trabajo Federal podrá referir el caso al Departamento de Justicia requiriendo que se inste una acción legal en contra del recipiente; el Secretario podrá tomar cualquier otra acción procedente en ley. 29 C.F.R. sec. 37.100. Finalmente, si el Secretario no logra obtener el cumplimiento a través de una determinación final, el único remedio a su haber es referir el caso al *Attorney General* con una recomendación para que presente la acción civil pertinente. 29 C.F.R. sec. 37.110.

En síntesis, ni la WIA, *supra*, ni su reglamento, van más allá de concederle al Secretario del Trabajo Federal o el *Attorney General* (cuando el primero le refiere el caso a éste) tomar acciones discrecionales. No surge de la WIA, *supra*, ni de la reglamentación aplicable que una persona de manera individual pueda vindicar sus derechos cuando le sean violados por acciones discriminatorias prohibidas por la WIA, *supra*. Véase, *Borrero Rodríguez v. Montalvo Vázquez*, 275 F. Supp. 2d 127, 132 (D. Puerto Rico 2003). Así, aunque la reglamentación promulgada por el Secretario del Trabajo Federal para implantar las disposiciones anti discriminatorias de la WIA, *supra*, establecen mecanismos administrativos dirigidos a asegurar el cumplimiento del recipiente de fondos WIA, si el recipiente se niega a cumplir, el único remedio disponible es la terminación, denegación o retención de

fondos a éste o un posible referido al *Attorney General* con una recomendación para que inste una acción civil. Véase, *Íd*. Es decir, la WIA, *supra*, no le brinda a la víctima de alegado discrimen, el derecho a demandar. *Íd*. Así, el *Attorney General* puede elegir o no presentar una acción civil para remediar la alegada discriminación cuando le sea referido el caso por el Secretario del Trabajo Federal. *Íd*. De ahí, que la decisión de presentar o no una acción civil recae en la discreción del *Attorney General* y no en la víctima del alegado discrimen.

Por ende, entendemos que los mecanismos administrativos implantados por el Secretario del Trabajo Federal no suplantan o sustituyen una acción privada bajo la Constitución y legislación estatal debido a que ni la ley ni su reglamentación proveen un remedio privado a través del cual la persona agraviada pueda resarcir su daño. *A fortiori*, no vemos ninguna incompatibilidad entre la acción presentada por la parte demandante y el esquema administrativo predicado en la WIA, *supra*.[24]

---

[24] Véase, *Borrero Rodríguez v. Montalvo* Vázquez, *supra*, pág. 132 en el que la corte de distrito para Puerto Rico al analizar la WIA, *supra*, concluyó lo siguiente:

> ...*The* statute and its regulations do not go beyond discretionary actions that may be taken by the Secretary and by the Attorney General, if the matter is referred. There is no provision under the statute or its regulations for individual enforcement of the rights of an individual who claims a violation of his First Amendment rights due to political discrimination. Although the regulations promulgated by the Secretary to implement the non-discriminatory provisions of the WIA do establish administrative mechanisms meant to ensure compliance by the recipient, if compliance is not

Por otro lado, los demandados arguyen que al analizar la Sección 188(a)(2) de la WIA, *supra*, conjuntamente con la Sección 37.85(c)(2) del *Code of Federal Regulations*, *supra*, surge la intención del Congreso de los Estados Unidos de establecer un procedimiento de jurisdicción primaria exclusiva ante el CRC. La aludida sección reza: "[w]here the complaint alleges discrimination on a basis that is prohibited by section 188 of the WIA, but not by any civil rights laws enforced by the Federal grantmaking agency, the CRC has sole jurisdiction over the complaint, and will retain the complaint and process it pursuant to this part. Such

> achieved because of the recipient's refusal, the only enforcement procedures are termination, denial or withholding of funds to the recipient or a possible referral of the matter to the Attorney General with a recommendation. These are the sole enforcement procedures. The statute does not give the alleged victim the right to sue. The Attorney General may or may not choose to file a civil action to remedy the alleged discrimination, if the matter is referred by the Secretary.
>
> ........
>
> A review of the administrative procedure implemented by the Secretary in this case leads us to conclude that they are insufficient to supplant sec. 1983 for neither the statute nor its regulations contain any private remedy through which aggrieved persons can seek redress.

En *Borrero Rodríguez v. Montalvo Vázquez*, *supra*, la reclamación judicial por alegado discrimen se llevó bajo la Sección 1983 de la Ley Federal de Derechos Civiles, *infra*. En este caso se sostuvo que el procedimiento administrativo preceptuado en la WIA, *supra*, no suplantaba una acción bajo la mencionada sección porque ese procedimiento no proveía un remedio privado a través del cual la persona agraviada pudiera resarcir su daño. Por ende, la corte de distrito para Puerto Rico decidió que ello reflejaba, que la intención del Congreso al promulgar la WIA, *supra* no era cerrarle las puertas a una acción judicial que se formulara bajo otro estatuto como la sección 1983 de la Ley Federal de Derechos Civiles, *infra*. A fin de cuentas el tribunal no desestimó la acción presentada. *Borrero Rodríguez v. Montalvo Vázquez*, *supra*.

bases generally include religion, political affiliation or belief, citizenship, and/or participation in a WIA Title I – financially assisted program or activity". Sección 3785(c)(2) del *Code of Federal Regulations*, *supra*.

De entrada, nada hay en dicho precepto que indique o afirme indubitadamente, que el CRC tendrá de forma exclusiva la jurisdicción sobre las controversias surgidas bajo la Sección 188(a)(2). En efecto, la Sección 37.85 del *Code of Federal Regulations*, 29 C.F.R. 37.85, de lo que trata es de las circunstancias en que el Director del CRC puede remitir, por vía excepcional, una reclamación de discrimen a otras autoridades apartes del CRC. Así por ejemplo, la Sección 3785(b) del *Code of Federal Regulations* postula: "[w]here the only allegation in the complaint is a charge of individual employment discrimination that is covered both by WIA or this part and by one or more of the laws listed below, then the complaint is a 'joint complaint', and the Director may refer it to the EEOC [Equal Employment Opportunity Commission] for investigation an conciliation...". 29 C.F.R. 3785 (b). Dicha sección trata sobre las querellas cuando la única alegación de discrimen está cubierta tanto por la WIA, *supra*, como por alguna de las siguientes leyes federales: *Title VII of the Civil Rights Act of 1964, Equal Pay Act of 1963, Age Discrimination in*

*Employment Act of 1976, Title I of the American with Disabilities Act of 1990*. En esas circunstancias, la Querella es considerada un "joint complaint" y el director del CRC puede referirla al Equal Employment Opportunity Commission (EEOC) para investigación y conciliación.

Empero, distinto a lo establecido en la Sección 37.85(b), donde el CRC comparte jurisdicción con el EEOC (joint complaint), cuando se trata de una Querella basada en discrimen bajo la Sección 37.85(c)(2) del *Code Of Federal Regulations*, *supra*, la jurisdicción recae solamente en el CRC. Véase, *Borrero Rodríguez v. Montalvo Vázquez*, *supra*, págs. 131-132. Por ende, entendemos que el Congreso de los Estados Unidos no ha tenido la intención de establecer un procedimiento exclusivo que impida a una víctima de alegado discrimen político instar una acción bajo la Constitución y legislación estatal. Más bien lo que podemos interpretar es que si la víctima decide llevar una reclamación de discrimen por el cauce administrativo --según dispone la WIA, *supra,* y su reglamentación aplicable-- entonces, de acuerdo a la naturaleza de su reclamo, el CRC tendrá jurisdicción o tanto el CRC como el Equal Employment Opportunity Commission (EEOC) la tendrán.

Todavía más importante para nuestra cavilación es la Sección 181(c)(4) de la WIA, 29 U.S.C.A. sec. 2931(c)(4).

Conforme mencionáramos, esa disposición abarca las violaciones bajo la Sección 188(a)(2) de la WIA, *supra*. La misma establece que los remedios disponibles por violaciones a la WIA, *supra*, no deben interpretarse en el sentido de que le prohíben al agraviado o querellante buscar un remedio autorizado bajo otra ley federal, estatal o local: "shall not be construed to prohibit a grievant or complainant from pursuing a remedy authorized under another Federal, State, or local law". Sección 181 de la WIA, *supra*. Véanse, además, *Torres Ramos v. Consorcio de la Montaña*, 286 F. Supp. 2d 126, 129 (D. Puerto Rico 2003); *Delgado Greo v. Trujillo*, 270 F. Supp. 2d 189, 194 (D. Puerto Rico 2003); *Caraballo Seda v. Rivera*, 261 F. Supp. 2d 76, 80 (D. Puerto Rico 2003).

Como puede observarse, del contenido de la mencionada sección, se desprende explícitamente que la intención del Congreso de los Estados Unidos al promulgar la WIA, *supra*, no fue ocupar el campo ni tampoco establecer un procedimiento de jurisdicción primaria exclusiva que vedara al agraviado o querellante de obtener un remedio a través de la vía judicial amparado en las leyes estatales.

Tampoco surge del historial legislativo de la WIA, *supra*, que el Congreso de los Estados Unidos tuviera la intención implícita de ocupar el campo con dicha legislación o de establecer un procedimiento de

jurisdicción primaria exclusiva en casos donde se alegue discrimen bajo la mencionada Sección 188(a)(2) de la WIA, *supra*. Véanse, H.R. Rep. 105-659 (29 de julio 1998) (reimpreso en 1998 U.S.C.A.N. pág. 332); H.R. Rep. 105-93 (8 de mayo de 1997); 144 Cong Rec S 4252 (1998); 144 Cong Rec S 9489 (1998). Además, luego de haber revisado las leyes que precedieron la WIA, *supra*, no hemos encontrado disposición alguna que apunte hacia la pretensión de ocupar el campo o de establecer un procedimiento de jurisdicción primaria exclusiva en casos de discrimen. Véanse, el *Job Training Partnership Act* (JTPA), 29 U.S.C. secs. 1501-1792(b) y el *Comprehensive Employment Training Act* (CETA), 29 U.S.C. secs. 801-999. Véase, además, *Lugo Torres* v. *Torres Maldonado*, 257 F. Supp. 2d 477 (2003).

No obstante, ASIFAL expone en su alegato que varios circuitos federales han resuelto que los remedios administrativos provistos en el *Comprehensive Employment Training Act* (CETA), *supra,* y en el *Job Training Partnership Act* (JTPA), *supra*, descartaban cualquier posible causa de acción bajo otras leyes (la Sección 1983 de la Ley Federal de Derechos Civiles, *infra*). En específico, ASIFAL se refiere a los siguientes casos: *CETA Workers Organizing Committee v. City of New York*, 617 F.2d 926, 931-934 (2do Cir. 1980); *Uniformed Firefighters Ass´n v. City of New York*, 676 F.2d 20, 22 (2do Cir. 1982); *AFSCME Local 506 v. Private Industry*

*Council*, 942 F.2d 376, 381 (6to Cir. 1991); *New Beckley Minino Corp. v. UMWA*, 18 F.3d 1161, 1166 (4to Cir. 1994).

En ese sentido, es menester hacer constar que otros circuitos federales han interpretado algunos de esos casos de forma variada. Así por ejemplo, en *Davis v. Mobile Consortium of Ceta*, 857 F.2d 737, 741 (11mo Cir. 1988) el tribunal resolvió que lo que *Uniformed Firefighters Ass´n v. City of New York*, *supra*, quiso significar fue que el *Comprehensive Employment Training Act* (CETA), *supra*, impedía acciones basadas en la Sección 1983 de la Ley Federal de Derechos Civiles, *infra*, cuando esa acción se llevaba bajo el *Comprehensive Employment Training Act* (CETA), *supra*, pero no cuando la acción se basaba en un reclamo constitucional. Así también, en *Black v. Broward Employment and Training Administration*, 846 F.2d 1311, 1312-1314 (11mo Cir. 1988) la corte de distrito resolvió que cuando la acción se basa en la Constitución federal o en un estatuto federal distinto al *Comprehensive Employment Training Act* (CETA), *supra,* entonces no había que preterir los remedios administrativos antes de llevar una acción judicial. En *Page v. DeLaune*, 837 F.2d 233, 240 (5to. Cir. 1988) se señaló que *Uniformed Firefighters Ass´n v. City of New York*, *supra*, sostuvo que el *Comprehensive Employment Training Act* (CETA), *supra*, no proveía un remedio exclusivo para atender violaciones constitucionales.

Por su parte, en el caso de *AFSCME Local 506 v. Private Industry Council*, *supra*, al interpretar la Sección 1553(b)(3)(B) del *Job Training Partnership Act* (JTPA), 29 U.S.C. sec. 1553(b)(3)(B) --la cual protegía a los empleados regulares de ser desplazados por participantes de los programas subsidiados con fondos JTPA--, la corte de circuito entendió que no había derecho implícito a llevar una acción privada bajo dicha sección de la ley. Sin embargo, en *Lugo Torres v. Maldonado*, *supra*, pág. 83, el Tribunal de Distrito para Puerto Rico destacó que *AFSCME Local 506 v. Private Industry Council*, *supra*, atendió un reclamo basado estrictamente en el *Job Training Partnership Act* (JTPA), *supra*. De esa manera concluyó que, como en el caso ante su consideración el reclamo era de naturaleza constitucional, el *Job Training Partnership Act* (JTPA), *supra*, no impedía una acción basada en la Sección 1983 de la Ley Federal de Derechos Civiles, *infra*. *Lugo Torres v Maldonado*, *supra*. Véase, además, *Caraballo Seda v. Rivera*, *supra*, págs. 82-83. Igual distinción es aplicable al caso de *New Beckley Minino Corp. v. UMWA*, *supra*,[25] toda vez que en este tampoco hubo un reclamo de naturaleza constitucional.

---

[25] Dicho caso resolvió que no hay derecho implícito a llevar una acción privada bajo las Secciones 1551 y 1574 del JTPA, 29 U.S.C. secs. 1551, 1574, las cuales trataban sobre entrenamiento en el trabajo y controles fiscales.

En síntesis, ni siquiera los precedentes que interpretaron las leyes que antecedieron la WIA, *supra*, establecieron de forma inequívoca que dichas leyes establecían un esquema administrativo exclusivo que impidiera instar una acción judicial basada en un reclamo de naturaleza constitucional. Por eso, no podemos refrendar los argumentos de ASIFAL sobre ese particular, máximo, cuando en el caso de autos la causa de acción esbozada por la parte demandante es una de naturaleza constitucional relacionada a alegada violación de derechos civiles bajo el palio de la Constitución de Puerto Rico.

De otra parte, es menester destacar que el Tribunal Supremo de los Estados Unidos todavía no ha interpretado la Sección 188(a)(2) de la WIA, *supra*. Sin embargo, el Tribunal de Distrito Federal para Puerto Rico, ha tenido la oportunidad de pasar juicio sobre la antedicha sección en más de una ocasión por lo que no debemos descartar su valor persuasivo para resolver la controversia ante nos. Por ejemplo, en *Delgado Greo v. Trujillo*, *supra*, la corte de distrito atendió una Demanda incoada por unos empleados del Consorcio Sur-Este de Puerto Rico. Estos demandaron al Consorcio por alegados actos de discrimen político al amparo de la Cuarta Enmienda de la Constitución Federal y de la Sección 1983 de la Ley

Federal de Derechos Civiles, 42 U.S.C. sec. 1983.[26] La parte demandada solicitó la desestimación de la acción incoada aduciendo que el tribunal carecía de jurisdicción sobre la materia debido a que el procedimiento administrativo establecido por la WIA, *supra*, era el remedio exclusivo para las reclamaciones de discrimen traídas bajo la Sección 188(a)(2) de dicho estatuto. A su vez, la parte demandante contestó la solicitud de desestimación alegando que el lenguaje estatutario de la WIA, *supra*, no impedía expresamente una acción bajo la Sección 1983 de la Ley Federal de Derechos Civiles, *supra*, y que tampoco surgía de tal ley, la intención del Congreso de los Estados Unidos de así hacerlo. Así las cosas, el Tribunal de Distrito, luego de analizar la ley, su reglamentación aplicable y su historial legislativo, concluyó que en efecto, la WIA, *supra*, no impide una acción bajo la Sección 1983 de la Ley Federal de Derechos Civiles, apuntando:

---

[26] La referida sección lee:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress aplicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia. Sección 1983 de la Ley Federal de Derechos Civiles, *supra*.

In sum, the WIA does not contain any particular phraseology that unmistakably evinces Congressional intent to foreclose a § 1983 claim or require exhaustion of the procedures available under it´s regulations.

........

The WIA´s legislative history is silent with regards to discrimination claims, exhaustion of grievance procedures, or preclusion of § 1983 claims.

........

...The statute does not expressly manifest Congress intent to foreclose such claims; nor can the Court find an implied congressional intent to do so. The Court may not lightly infer or conclude that Congress intended to preclude § 1983 claims to remedy the deprivation of federally secured rights subject to WIA. *Delgado Greo v. Trujillo*, *supra*, págs. 195, 196.

A igual conclusión llegó el Tribunal de Distrito Federal para Puerto Rico en los casos de *Caraballo Seda v. Rivera*, *supra*; *Torres Ramos v. Consorcio de la Montaña*, *supra,* y *Borrero Rodríguez v. Montalvo Vázquez*, *supra*. Cabe señalar, que en dichos casos, al igual que en el de *Delgado Greo v. Trujillo*, *supra*, la acción promovida por la parte demandante se fundamentaba en la Sección 1983 de la Ley Federal de Derechos Civiles, *supra*. Sobre lo anterior, ASIFAL así como el Procurador General arguyen que dichas decisiones no deben aplicarse al caso de autos debido a que la parte demandante omitió esbozar o alegar una causa de acción bajo la Sección 1983 de la Ley Federal de Derechos Civiles, *supra*.

Empero, la razón primordial de citar esos precedentes es que en todos se ha hecho exégesis, *lato sensu*, de la Sección 188(a)(2) de la WIA, *supra*. Así, aunque la ley o disposición sobre la cual se fundamentó la Demanda en dichos casos y las que sirven de sostén al caso de autos sean distintas, lo medular en ambos escenarios ha sido auscultar si la WIA, *supra*, impide que una acción judicial evada la vía administrativa cuando se alega discrimen por una razón contemplada en su Sección 188(a)(2). Por eso, aunque en el caso de autos la acción promovida por la parte demandante se apoyó esencialmente en la Constitución y legislación local y en aquellos en la Sección 1983 de la Ley Federal de Derechos Civiles, *supra*, el ejercicio de hermenéutica ha sido el mismo que ha realizado la corte de distrito en los casos recién enunciados debido a que la teleología en ambos contextos ha sido homogénea: examinar la WIA, *supra*, su reglamentación aplicable e historial legislativo para determinar si el Congreso de Estados Unidos tuvo la intención de impedir que las reclamaciones de discrimen basadas en dicha sección, puedan preterir el trámite administrativo que provee la ley por medio de una acción judicial independiente.

Nótese, además, que en ambos contextos (en el caso de autos y en los casos de distrito citados) la etiología de la acción incoada es la alegada violación de un

derecho constitucional por una acción discriminatoria, esencialmente, de índole política. El discrimen político es una acción que viola derechos constitucionales reconocidos tanto por la Constitución Federal como por la Constitución de Puerto Rico. Bajo la Constitución de Estados Unidos el asunto se atiende bajo la Primera Enmienda, Enmda. IV, Const. EE.UU., L.P.R.A., Tomo 1. --véase, *Board of County Commissioners v. Umbehr*, 515 U.S. 668 (1996)-- y bajo la Constitución de Puerto Rico se atiende de forma directa bajo el Art. II, Sec. 1, Const. E.L.A., *supra*.

Por su parte, la Sección 1983 de la Ley Federal de Derechos Civiles, *supra*, es un vehículo para que los ciudadanos puedan vindicar los derechos que la Constitución y las leyes de los Estados Unidos confieren frente aquellas personas que abusan de su poder cuando actúan so color de autoridad estatal. *Leyva v. Policías*, *supra*, pág. 500; *Graham v. Connor*, 490 U.S. 3869, 394 (1989). Así, en Estados Unidos se han llevado acciones bajo la aludida sección en violación de la Primera Enmienda cuando se alega haber sido objeto de actos de discrimen político. Véanse, *Bailey v. Town of Evans*, New York 443 F.Supp.2d 427 (2006); *Santiago Rodríguez v. Rey*, 404 F.Supp.2d 400 (D. Puerto Rico 2005).

Por ende, vemos que tanto en los casos de distrito como en el de autos, aunque el reclamo se conduce por

medios heterogéneos, se trata básicamente de lo mismo: alegada violación de derechos constitucionales.

Por todo lo aquí expuesto, colegimos que la WIA, *supra*, no establece un procedimiento de jurisdicción exclusiva para atender reclamaciones surgidas bajo el palio de la Sección 188(a)(2) *supra*. De igual forma, concluimos que la WIA, *supra,* no ocupa el campo pues ni de manera expresa ni implícita (de la intención del Congreso) surge tal pretensión. Por ende, resolvemos que los tribunales estatales tienen jurisdicción concurrente con el CRC y los tribunales federales para atender asuntos como los del caso *sub judice.* De esa manera llegamos a la misma conclusión que el foro apelativo intermedio pero por medio de otros fundamentos.[27]

---

[27] En cuanto al segundo error planteado por ASIFAL, de la Sentencia del Tribunal de Primera Instancia lo único que surge es que se desestimó el caso por falta de jurisdicción: "Por carecer de jurisdicción y a tenor con los fundamentos antes expuestos procedemos a declarar con lugar la Solicitud de Desestimación interpuesta por el codemandado Municipio de Juana Díaz y por consiguiente NO HA LUGAR a la moción en Oposición a Solicitud de Desestimación presentada por la demandante". Apéndice 8 del Recurso de *Certiorari* ante nos por parte del Procurador General, Sentencia del Tribunal de Primera Instancia, 31 de enero de 2006, pág. 4. Aunque el Tribunal de Primera Instancia fundamentó sucintamente, mediante *obiter dictum*, lo relacionado al interés propietario de la empleada sobre las funciones de su puesto (relacionado al reclamo de debido proceso de ley por privación de funciones) y lo concerniente a la personalidad jurídica propia que posee un Consorcio bajo la Ley Núm. 81, *supra*, (relacionado a la reclamación contra los municipios miembros de ASIFAL) dicho foro no resolvió ninguno de los dos extremos y se remitió a dictaminar que no tenía jurisdicción para atender el recurso.

Por su parte, el Tribunal de Apelaciones, dentro de su facultad apelativa, resolvió exclusivamente el asunto jurisdiccional, que fue el que la parte demandante y ahora recurrida llevó a su consideración. El foro apelativo intermedio atendió la parte dispositiva de la Sentencia emitida por el Tribunal de Primera Instancia. Al así actuar, respetó el corolario básico del Derecho apelativo de que la apelación o revisión se da contra la sentencia o decisión apelada y no contra sus fundamentos. *Pueblo v. Pérez*

**III.**

De conformidad con lo antes expresado, se confirma la sentencia emitida por el Tribunal de Apelaciones que revocó al Tribunal de Primera Instancia. Por consiguiente, se devuelve el caso al Tribunal de Primera Instancia para que resuelva en sus méritos la totalidad de las controversias planteadas de conformidad con lo aquí resuelto.

Se dictará Sentencia de Conformidad.


                        Mildred G. Pabón Charneco
                        Jueza Asociada

---

*Rodríguez*, 159 D.P.R. 554, 566 (2003); *Sánchez v. Eastern Airlines, Inc.*, 114 D.P.R. 691, 695 (1983). Como afirma el Ex Gobernador de Puerto Rico y Profesor Rafael Hernández Colón: "Los recursos se formulan contra el fallo, contra la parte dispositiva y no contra la opinión que pueda emitir el tribunal y sus conclusiones. Lo que agravia es la parte dispositiva, o sea, el fallo, el cual es el objeto del recurso". R. Hernández Colón, *op. cit.*, pág. 373. De la misma forma, al ejercer nuestra facultad revisora sobre el presente recurso, nos hemos ceñido a revisar la sentencia emitida por el Tribunal de Apelaciones.

Por lo expresado, entendemos que es improcedente entrar a discutir el segundo error planteado por ASIFAL. El Tribunal de Apelaciones resolvió la parte dispositiva de la Sentencia del Tribunal de Primera Instancia y nosotros hemos hecho lo propio con relación a la Sentencia emitida por el Tribunal de Apelaciones. Hemos resuelto el asunto jurisdiccional.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Dalma Semidey Ortiz; Noel
Vázquez Morales; Sociedad
Legal de Gananciales, et al.

   Demandantes-Recurridos

         v.

Consorcio Sur-Central

(ASIFAL)

   Demandados-Peticionarios

CC-2006-768

CC-2006-847

SENTENCIA

En San Juan, Puerto Rico, a 22 de diciembre de 2009.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se confirma la Sentencia emitida por el Tribunal de Apelaciones que revocó al Tribunal de Primera Instancia y se devuelve el caso a éste último para que resuelva en los méritos la totalidad de las controversias planteadas de conformidad con lo aquí resuelto.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo